# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| HAROLD C. WILSON | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | NO. 04-5396 |

## MEMORANDUM AND ORDER

L. FELIPE RESTREPO                                                                    MARCH 31, 2010
UNITED STATES MAGISTRATE JUDGE

      Before the Court is the Motion to Dismiss Plaintiff's Complaint Against Defendants, former District Attorney Lynne Abraham, former District Attorney Ronald Castille,[1] and former Assistant District Attorney Jack McMahon, and plaintiff's opposition thereto. The motion requests dismissal of the claims against the moving defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. (Defs.' Mot. 1.) In particular, the moving defendants make the following claims in support of their motion: (1) plaintiff's individual capacity claims against the moving defendants are barred by the doctrine of prosecutorial immunity; (2) plaintiff's Amended Complaint fails to state any official capacity claim; (3) a remedy of damages is not available to plaintiff in this action; and, (4) the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. (Defs.' Br. 7-17.)

      In his Response to defendants' motion, plaintiff argues that: (1) the moving defendants

---

[1]The Honorable Ronald D. Castille currently serves as the Chief Justice of the Supreme Court of Pennsylvania.

are not entitled to absolute immunity for allegedly manipulating evidence and withholding exculpatory evidence during the investigative phase of the criminal case which was brought against plaintiff; (2) plaintiff's Amended Complaint is sufficiently pled; (3) the Complaint properly pleads an official capacity claim; (4) plaintiff's claims for damages are properly pled; and, (5) this Court should retain jurisdiction of plaintiff's state law claims. (Pl.'s Resp. 4-16.) Plaintiff concedes that, based on prosecutorial immunity, the moving defendants are entitled to dismissal of the claims alleging improper conduct during voir dire and any conspiracy claims specifically related thereto. (Pl.'s Resp. 9-10; id. at 2-3 ("Plaintiff concedes that, according to the case law, defendants are entitled to absolute immunity for [the alleged abuse of voir dire]"); id. at 14 ("[p]laintiff has conceded here that his Batson claims against the defendant-prosecutors are not cognizable"); see also Pl.'s Sugg. Order.)

**Discussion**

"[P]rosecutors are subject to varying levels of official immunity" and absolute prosecutorial immunity attaches only to "actions performed in a 'quasi-judicial' role," such as participation in court proceedings and other conduct "intimately associated with the judicial phases" of litigation. Carter v. City of Phila., 181 F.3d 339, 356 (3d Cir. 1999) (citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994));[2] see Giuffre, 31 F.3d at 1251 (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Thus, the Supreme Court has stated that "absolute

---

[2]"In Giuffre, [the Court of Appeals] followed the Supreme Court's holding in Burns[ v. Reed, 500 U.S. 478 (1991),] that a prosecutor is not absolutely immunized for advice given to police during the investigative stages of a criminal proceeding." Carter, 181 F.3d at 356 (citing Giuffre, 31 F.3d at 1253); see Giuffre, 31 F.3d at 1253 (citing Burns, 500 U.S. at 496).

immunity may not apply when a prosecutor is not acting as an 'officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein, 129 S. Ct. 855, 861 (2009) (citing Imbler, 424 U.S. at 431 n.33); see Yarris v. County of Delaware, 465 F.3d 129, 135-36 (3d Cir. 2006) (noting that immunity does not apply if prosecutor committed misconduct while acting as an administrator or investigator). For example, "[a]dvising the police in the investigative phase of a criminal case is [not] so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute [prosecutorial] immunity." Burns, 500 U.S. at 493 (quoting Imbler, 424 U.S. at 430) (citation omitted).

Thus, "the Supreme Court directs a 'functional' approach to immunity issues." Carter, 181 F.3d at 356 (citing Burns, 500 U.S. at 486-87) (citation omitted). Furthermore, "the official seeking absolute immunity . . . bear[s] the burden of showing it is justified for the function in question." Carter, 181 F.3d at 356 (citing Buckley v. Fitzsimmons, 509 U.S. 259, (1993)).

Here, to the extent that the moving defendants argue that they are entitled to absolute immunity with regard to plaintiff's claims against them in their individual capacities relating to "the jury selection process in plaintiff's 1989 prosecution, as well as for conduct in connection with plaintiff's state post-conviction proceedings," or conspiracy claims related thereto, (Defs.' Br. 7-10), defendants' motion is granted.[3] Absolute prosecutorial immunity attaches to "actions

---

[3]Plaintiff concedes that: "Defendants are correct that if they are entitled to immunity for the underlying conduct, then they are entitled to immunity for a conspiracy to commit the underlying conduct," (Pl.'s Resp. 9). See, e.g., Patterson v. City of Phila., 2009 WL 1259968, *8 (E.D. Pa. May 1, 2009) ("The doctrine of absolute prosecutorial immunity precludes conspiracy-based claims as well."); Hull v. Mallon, 2001 WL 964115 (E.D. Pa. Aug. 21, 2001) ("When the underlying activity is cloaked with prosecutorial immunity, a conspiracy claim is similarly precluded . . .").

3

performed in a 'quasi-judicial' role," such as participation in court proceedings and other conduct "intimately associated with the judicial phases" of litigation, see Carter, 181 F.3d at 356 (citing Giuffre, 31 F.3d at 1251); see Giuffre, 31 F.3d at 1251 (quoting Imbler, 424 U.S. at 430). (See also Pl.'s Resp. 9-10 (conceding that, based on absolute prosecutorial immunity, the moving defendants are entitled to dismissal of the claims related to alleged conduct during voir dire); id. at 2-3 ("Plaintiff concedes that, according to the case law, defendants are entitled to absolute immunity for [the alleged abuse of voir dire]"); id. at 14 ("[p]laintiff has conceded here that his Batson claims against the [moving defendants] are not cognizable"); see also Pl.'s Sugg. Order.)

However, plaintiff's Amended Complaint also alleges that "**[i]n an effort to *arrest* and imprison Plaintiff for the crimes he did not commit, Defendants, acting personally, as well** [sic] **by and through conspiracy with others, manipulated and coached witnesses, and then withheld from Plaintiff that they had done so**." (Pl.'s Am. Compl. ¶ 26 (emphases added); see also id. ¶ 28 ("Defendants manipulated, fabricated, and withheld evidence from Plaintiff in an effort to falsely implicate . . . Plaintiff for murder."); id. ¶ 29 (referring to "Defendants' misconduct during the investigation [and] arrests"). "[A]bsolute immunity may not apply when a prosecutor is not acting as an 'officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp, 129 S. Ct. at 861 (citing Imbler, 424 U.S. at 431 n.33); see Yarris, 465 F.3d at 135-36 (noting that immunity does not apply if prosecutor committed misconduct while acting as an investigator); Burns, 500 U.S. at 493 (quoting Imbler, 424 U.S. at 430) (conduct during "the investigative phase of a criminal case is [not] so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute [prosecutorial] immunity" (citation omitted)); Jaslar v. Zavada, 2009 WL 82553, *10 (M.D. Pa.

4

Jan. 12, 2009) (citing Buckley, 509 U.S. at 271-72) ("Thus, for example, a prosecutor who fabricates evidence before a special grand jury was convened to investigate the alleged criminal conduct is not protected by absolute immunity."). Therefore, in this case, to the extent that plaintiff's Amended Complaint alleges conduct related to the moving defendants allegedly manipulating and coaching witnesses in an investigative capacity prior to performing actions in a quasi-judicial role, the moving defendants are not entitled to absolute prosecutorial immunity.

Nevertheless, it is noted that for liability to attach under 42 U.S.C. § 1983, there must be an element of personal involvement on the part of the defendants through particular participation, knowledge, or acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Monroe v. Beard, 2007 WL 2359833, *21 (E.D. Pa. Aug. 16, 2007). Plaintiff's Amended Complaint alleges that he was arrested in 1988 and charged with three murders. (Pl.'s Am. Compl. ¶ 1.) Since former District Attorney Lynne Abraham did not serve as District Attorney until 1991, and before that she served as a Judge on the Court of Common Pleas of Philadelphia for more than ten (10) years,[4] she lacked the personal involvement in the investigative stages of the criminal

---

[4]While the Amended Complaint does not provide the dates of former District Attorney Abraham's tenure with the District Attorney's Office, according to her biography as published on the website of the law firm where she is currently a partner, she did not serve as Philadelphia's District Attorney until 1991. See http://www.archerlaw.com/attorneysdetail.php?name_first =Lynne+M&name_last=Abraham. For more than 10 years prior to that, she served as a Judge of the Court of Common Pleas of Philadelphia. Id. "Because this information is a matter of public record, and is both generally known and capable of accurate and ready determination, the Court will take judicial notice." See, e.g., Magnum v. Archdiocese of Phila., 2006 WL 3359642, *9 n.11 (E.D. Pa. Nov. 17, 2006) (taking judicial notice of Cardinal's tenure for purposes of a motion to dismiss); see also Fed. R. Evid. 201(b) (type of facts subject to judicial notice); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider items subject to judicial notice and matters of public record, in addition to the pleadings, when evaluating motion to dismiss).

charges against plaintiff, required for a claim under § 1983.[5]  See Rode, 845 F.2d at 1207; Monroe, 2007 WL 2359833, at *21.  Accordingly, defendants' motion to dismiss is granted with respect to former District Attorney Lynne Abraham.

With regard to the remaining two moving defendants, plaintiff's allegations pertaining to the defendants' personal involvement at the investigative stages of the criminal matter are at least plausible.  Plaintiff's Amended Complaint alleges that plaintiff was arrested in 1988 and charged with three murders.  (Pl.'s Am. Compl. ¶ 1.)  According to Chief Justice Castille's biography as published on the website of the Supreme Court of Pennsylvania, he served as Philadelphia's District Attorney from 1986-1991.[6]  See http://www.aopc.org/T/SupremeCourt/SupremeCourt Justices/ChiefJustice Castille.htm.  Although defendants point out that the transcript of plaintiff's preliminary hearing reflects that Mr. McMahon was not at that hearing, (Defs.' Reply 4), defendants do not appear to deny that Mr. McMahon was an Assistant District Attorney during the relevant time period.[7]  To the extent that plaintiff's Amended Complaint alleges conduct relating to manipulation and coaching of witnesses in an investigative capacity, defendants are not entitled to absolute prosecutorial immunity.

The moving defendants argue in their Reply Brief that they are entitled to qualified

---

[5]Indeed, former District Attorney Abraham did not serve as District Attorney until well after plaintiff had already been convicted by a jury in 1989.  See Commonwealth v. Wilson, 672 A.2d 293, 296 (Pa. 1996) (confirming that plaintiff was convicted by a jury on Oct. 4, 1989).

[6]As with former District Attorney Lynne Abraham's biographical information, since this information "is a matter of public record, and is both generally known and capable of accurate and ready determination, the Court will take judicial notice."  See, e.g., Magnum, 2006 WL 3359642, at *9 n.11; see also Fed. R. Evid. 201(b); Buck, 452 F.3d at 260.

[7]Defendants acknowledge that Mr. McMahon "was the prosecutor for Plaintiff's trial in 1989."  (Defs.' Reply 4.)

immunity. (Defs.' Reply Br. 5.) In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court articulated a two-step test that is appropriate for determining whether a government official is entitled to qualified immunity. Id. at 201; Teeple v. Carabba, 2009 WL 5033964, *15 (E.D. Pa. Dec. 22, 2009). The first step is for the court to address whether "the officer's conduct violated a constitutional right[.]" Saucier, 533 U.S. at 201; Teeple, 2009 WL 5033964, at *15; see also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (noting that the first question to be asked by a court in confronting a qualified immunity question is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"). If the Court finds that a constitutional violation has occurred, then the Court proceeds to the second step. The inquiry in the second step is whether the right that was violated was "clearly established," meaning that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Teeple, 2009 WL 5033964, at *15.

In this case, defendants assert they are protected by qualified immunity since "Plaintiff has not provided any facts that demonstrate that the conduct of any of the [moving] defendants violated any of his constitutional rights." (Defs.' Reply Br. 6.) However, in this case plaintiff claims that "[i]n an effort to arrest and imprison Plaintiff for the crimes he did not commit, Defendants, acting personally, as well [as] by and through conspiracy with others, manipulated and coached witnesses, and then withheld from Plaintiff that they had done so." (Pl.'s Am. Compl. ¶ 26; see also id. ¶ 28 ("Defendants manipulated, fabricated, and withheld evidence from Plaintiff in an effort to falsely implicate . . . Plaintiff for murder.").) Plaintiff's allegations in the Amended Complaint are sufficient at this stage of the proceedings to survive defendants' claim

7

of qualified immunity. See, e.g., Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004) ("Although constitutional interpretation occasionally can prove recondite, some truths are self-evident. This is one such: if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit . . . . Actions take in contravention of this prohibition necessarily violate due process."); Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000) (recognizing the right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity").

Citing to Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), defendants also argue that the Amended Complaint is insufficient due to "conclusory statements." (Defs.' Br. 6.) In Iqbal, the Supreme Court found the plaintiff failed to plead sufficient factual matter that, if taken as true, stated a claim that the defendants deprived him of his constitutional rights. See Iqbal, 129 S. Ct. at 1944. To survive a motion to dismiss, Iqbal explains, "a complaint must contain sufficient factual matter," that if accepted as true, states a claim for relief "that is plausible on its face.'" Id. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Iqbal sets out two working principles which underlie the Supreme Court's decision in Twombly. Id. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. In Iqbal, the plaintiff's complaint failed to allege facts plausibly showing that "petitioners purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin." Id. at 1952. As Iqbal explains, the plaintiff's "only factual allegation against [the defendants] accuses them of adopting a policy approving 'restrictive conditions of confinement' for post-September-11 detainees until they were cleared by the FBI.'" Id. The Supreme Court found the complaint failed to show, or even intimate, that petitioners had purposefully housed detainees due to their race, religion, or national origin, and would need to "allege more by way of factual content to 'nudge' the claim of purposeful discrimination 'across the line from conceivable to plausible.'" Id.

In this case, plaintiff, although barely, has plead sufficient factual allegations for the Court to draw a "reasonable inference that the [remaining moving] defendant[s] [are] liable for the misconduct alleged," and has therefore met the pleading requirement of Federal Rule of Civil Procedure 8(a). Id. at 1949. Plaintiff's complaint in this case alleges, among other things, factual allegations of "misconduct during the investigation" and "arrests," (Pl.'s Am. Compl. ¶ 29), including "manipulat[ion] and coach[ing] witnesses, and then withh[olding] from Plaintiff that they had done so" in an "effort to arrest and imprison Plaintiff for the crimes he did not commit." (Id. ¶ 26; see also id. ¶ 28 ("Defendants manipulated, fabricated, and withheld evidence from Plaintiff in an effort to falsely implicate . . . Plaintiff for murder.").) These allegations meet the standard of Rule 8(a) and Iqbal, with regard to plaintiff's claims against Chief Justice Castille and former Assistant District Attorney McMahon. See Iqbal, 129 S. Ct. at

9

1952. The plausibility standard applied to the factual allegations of the pleadings discussed in Iqbal "is not akin to a 'probability requirement.'" Iqbal, 129 S. Ct. at 1949.

Defendants also challenge plaintiff's claims against each of the moving defendants in their official capacities, (Pl.'s Am. Compl. ¶¶ 10-12). Defendants argue that "Plaintiff wholly fails to state any official capacity claim against Abraham or McMahon." (Defs.' Br. 11.) Specifically, defendants state that "[u]nder Pennsylvania law, only the District Attorney has policymaking authority for the District Attorney's Office; assistant district attorneys are not policymakers for the District Attorney's Office," and "[n]either Abraham [n]or McMahon were policymakers for the District Attorney's Office at the time of plaintiff's alleged civil rights violations." (Id.) Plaintiff responds that "[t]he [C]omplaint expressly pled that liability arises because the prosecutors' misconduct, in manipulating evidence and withholding exculpatory evidence during the investigatory stage of the matter, was part of a standard operating procedure long accepted and perpetuated within the district attorney's office." (Pl.'s Resp. 14 (citing Pl.s' Am. Compl. ¶¶ 24-44).)

The Amended Complaint makes claims against Chief Justice Castille and Mr. McMahon in their "administrative, policymaking, training, and investigative capacit[ies] regarding the arrest . . . of Mr. Wilson."[8] (Pl.'s Am. Compl. ¶¶ 10, 12.) The Amended Complaint further alleges:

> Plaintiff's injuries were proximately caused by policies and practices on the part of Defendant City of Philadelphia to pursue wrongful convictions through profoundly flawed investigations and prosecutions. In this way, these Defendants violated Plaintiff's rights by maintaining policies and practices that were the

---

[8]Although the Amended Complaint also asserts claims against former District Attorney Abraham "in her individual and official capacities," (Pl.'s Am. Compl. ¶ 11), as explained, she was not even employed at the District Attorney's Office at the time of the misconduct alleged by plaintiff, see supra note 4, and defendants' motion to dismiss is granted in that regard.

moving force driving the foregoing constitutional violations.

(Id. ¶ 42.)

"A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself." A.M. ex rel JMK v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572 (3d Cir. 2004) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)); see Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)) ("Personal-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"). In Monell, the Supreme Court held that municipal liability under 42 U.S.C. § 1983 cannot be based on the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights. Monell, 436 U.S. at 691-95; Patterson, 2009 WL 1259968, at *9. Municipal liability only attaches when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694; Patterson, 2009 WL 1259968, at *9.

Under Monell, a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)); Patterson, 2009 WL 1259968, at *10; see Pembauer v. City of Cincinnati, 475 U.S. 469, 481 (1986). A plaintiff may establish a custom "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz, 915 F.2d at 850 (citing Andrews, 895 F.2d at 1480); Patterson, 2009 WL 1259968, at

*10.  "In other words, custom may be established by proving knowledge of, and acquiescence to, a practice."  Id. (citing Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989)).

"It is clear under either route that 'a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Id. (citing Bielevicz, 915 F.2d at 850); see Bielevicz, 915 F.2d at 850 (citing Andrews, 895 F.2d at 1480).  In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision to take an action."  Andrews, 895 F.2d at 1481; Patterson, 2009 WL 1259968, at *10.

"[U]nder Pennsylvania law, only the District Attorney - and not Assistant District Attorneys - possesses policymaking authority for the District Attorney's Office."  Id. (dismissing claim against all assistant district attorneys since they did not possess policymaking authority); Payson v. Ryan, 1992 WL 111341 (E.D. Pa. May 14, 1992), aff'd, 983 F.2d 1051 (3d Cir. 1992).  Therefore, defendants' motion to dismiss is granted with respect to plaintiff's claims against Mr. McMahon in his official capacity.  See id.  Since Chief Justice Castille served as District Attorney during the relevant time period alleged in plaintiff's Amended Complaint, plaintiff's claims against the Chief Justice in his official capacity as District Attorney at that time survive at this stage of the proceedings since he was the decision-maker for the District Attorney's Office.  See, e.g., Patterson, 2009 WL 1259968, at *11 (where claim against the District Attorney in her official capacity alleging a practice or custom including "manipulative investigative procedures, intimidation of witnesses, concealment of exculpatory evidence and fabrication of false evidence" survived a motion to dismiss).

Defendants also argue that damages are unavailable as to plaintiff's claims "for the alleged discriminatory jury selection at his 1989 criminal prosecution." (Defs.' Br. 13; see id. ("Through this civil rights lawsuit, plaintiff seeks damages, presumably for the alleged discriminatory jury selection at his 1989 criminal prosecution.").  As explained, plaintiff has conceded in his Response to Defendants' Motion to Dismiss that his claims against the moving defendants related to alleged discriminatory jury selection are not cognizable. (Defs.' Resp. 14; see Defs.' Sugg. Order.) Accordingly, defendants' motion to dismiss is granted in that regard.[9]

Defendants next request that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims "[b]ecause plaintiff fails to state any federal claims upon which relief can be granted." (Defs.' Br. 15, 16.) However, this is not a ground to decline to exercise supplemental jurisdiction in this case since, as explained, some of plaintiff's claims related to the investigative phase of the criminal matter survive defendants' motion to dismiss.

Defendants further argue that "[e]ven if this Court elects to exercise supplemental jurisdiction over plaintiff's state law claims, the [state law] claims should be dismissed because the [moving] defendants are immune from liability." (Id.) Citing Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001), they first argue that under Pennsylvania's common law doctrine of absolute privilege, "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." Defendants argue that since "District Attorneys and all Assistant District Attorneys are considered 'high public officials' to whom the

---

[9]Defendants' motion does not specifically challenge plaintiff's request for damages related to plaintiff's claims related to conduct in the investigative phase, or defendants' non-quasi-judicial role, (Defs.' Br. 13), and plaintiff continues to pursue those claims, (Pl.'s Resp. 14).

13

doctrine . . . extends," (Defs.' Br. 16-17), the moving defendants cannot be held liable for plaintiff's state law claims, (id. at 17).

While the moving defendants are correct that they were all "high public officials," for purposes of Pennsylvania's common law doctrine of absolute privilege, see Durham, 772 A.2d at 69-70, as plaintiff points out, (Pl.'s Resp. 15), under Pennsylvania law, common law absolute immunity is applied to prosecutors for actions taken "in the course of the official's duties or powers and within the scope of his authority." See Durham, 772 A.2d at 69-70 (quoting Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952)). Here, plaintiff concedes in his Response to Defendants' Motion to Dismiss that the moving defendants are entitled to dismissal of claims against the moving defendants in their quasi-judicial roles.[10] (See Pl.'s Resp. 15).

Defendants further argue that "immunity bars recovery against the [moving] defendants in their **official** capacities under the Pennsylvania Political Subdivision Tort Claims Act ('TCA'), 42 Pa. C.S. § 8541 et seq." (Defs.' Br. 17 (emphasis added); see also id. (the TCA "provides that **local agencies** are not liable for injuries caused by their own acts . . .) (emphasis added).) Plaintiff does not specifically dispute that the moving defendants are entitled to immunity under the TCA in their official capacities.[11] (Defs.' Br. 15.)

---

[10]In support of their motion, defendants do not specifically claim that the alleged conduct of manipulating and coaching witnesses during the investigative phase of the criminal matter constitutes conduct made "in the course of the official's duties or powers and within the scope of [their] authority," for purposes of Pennsylvania's common law absolute immunity doctrine, see Durham, 772 A.2d at 69-70 (quoting Matson, 88 A.2d at 895). (Defs.' Br. 17; see also Defs.' Reply Br. (failing to address the issue of common law absolute immunity).)

[11]Defendants do not specifically argue that the TCA provides immunity for prosecutors in their individual capacities, (Defs.' Br. 17 ("immunity bars recovery against the [moving] defendants in their official capacities under the [TCA]"). See 42 Pa. C.S. § 8541 (". . . no **local agency** shall be liable for any damages . . .") (emphasis added); see also Douris v. Schweiker,

14

**Conclusion**

Defendants' Motion to Dismiss is granted to the extent that they argue that plaintiff's claims against former District Attorney Lynne Abraham lacked the required personal involvement, under 42 U.S.C. § 1983. The motion is also granted to the extent that plaintiff's claims against the moving defendants allege conduct taken in the moving defendants' quasi-judicial role, as opposed to participation in investigatory conduct. In addition, defendants' motion is granted with regard to plaintiff's § 1983 claims against Assistant District Attorney Jack McMahon in his official capacity. Finally, defendants motion is granted with regard to plaintiff's state law claims against the moving defendants in their official capacities.

An implementing Order follows.

---

229 F. Supp.2d 391, 402-03 (E.D. Pa. 2002) (applying TCA immunity to District Attorney's Office as a local agency).