IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD WILSON, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | NO. 04-5396 |
| | : | |
| Defendants. | : | |

### MEMORANDUM / ORDER

**AND NOW**, this 25th day of March, 2014, the Court having considered Plaintiff's Motion to Compel (Doc. 183), Defendant District Attorney R. Seth Williams' Response (Doc. 184) and Plaintiff's Supplement to his Motion to Compel (Doc. 185), and having held oral argument by telephone conference, it is **HEREBY ORDERED** that the Motion (Doc. 183) is **GRANTED,** for the reasons that follow and subject to the conditions stated.

1. Plaintiff Harold Wilson has indicated that he intends to rely on three statistical studies, authored by Professors David Baldus and George Woodworth, in support of his *Batson / Monell* claim against Defendant R. Seth Williams (collectively "the Baldus & Woodworth studies").[1] *See* Doc. 168 ¶¶ 7-21. On November 8, 2013, Professor George Woodworth supplied a list of 317 cases on which the studies relied. *See* Docs. 170, 171, 171-1, 175 p. 2. In light of the belated disclosure, I granted the District Attorney's motion to reopen discovery until

---

[1] The studies are: (1) David C. Baldus et. al., *Racial Discrimination and the Death Penalty in the Post-Furman Era: An Empirical and Legal Overview, with Recent Findings from Philadelphia*, 83 Cornell L. Rev. 1638 (1998); (2) David C. Baldus et. al., *The Use of Peremptory Challenges in Capital Murder Trials: A Legal and Empirical Analysis*, 3 U. Pa. J. Const. L. 3, 6 (2001); and (3) David C. Baldus et. al., *Statistical Proof of Racial Discrimination in the Use of Peremptory Challenges: The Impact and Promise of the Miller-El Line of Cases As Reflected in the Experience of One Philadelphia Capital Case*, 97 Iowa L. Rev. 1425, 1428 (2012).

1

March 7, 2014, limited to matters related to the Baldus & Woodworth studies and underlying facts.  *See* Doc. 180.

2. On March 7, 2014, the District Attorney identified twelve additional witnesses pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  *See* Doc. 185 p. 1, Ex. A. They include nine current and former Assistant District Attorneys ("ADAs") who prosecuted cases on the Baldus & Woodworth case list.  As the District Attorney clarified during the telephone conference held with the parties on March 19, 2014, these witnesses will testify – if they do testify – that they did not engage in intentional discrimination during jury selection in the cases that they prosecuted.

3. Plaintiff Harold Wilson now moves the Court to compel the production of any notes made by these prosecutors during jury selection in the approximately 160 cases listed on the attached document, entitled "List of Cases Prosecuted by Rule 26(A)(1) Witnesses and Included in the Baldus and Woodworth Studies."  The basis for the request is two-fold:  First, Plaintiff argues that the notes are essential to show instances of intentional discrimination in jury selection, which the Plaintiff must do in order to prove a custom sufficient to make out his *Monell* claim.  *Cf. Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)); *id.* ("Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law.").  Second, Plaintiff argues that the notes are essential to effectively cross-examine the ADA witnesses.  If the witnesses testify that they did not select jurors on the basis of race, as the District Attorney has represented that they would, Plaintiff

contends that he is entitled to challenge their credibility on the basis of their own contemporaneous notes.

4.  The District Attorney objects to the discovery request on two grounds. The District Attorney asserts, first, that the Court must make a "threshold determination" as to whether Plaintiff is entitled to present evidence of discrimination in jury selection in cases other than his own. Resp. at 5. The District Attorney contends that he is not, invoking estoppel, res judicata, and practicality concerns.

5.  To clarify the arguments, I note that for purposes of federal law "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "These terms have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Id.* n.5.

6.  Neither claim preclusion nor issue preclusion applies here. Claim preclusion applies when there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). Most obviously, plaintiff Harold Wilson was not a party in any of the prior proceedings to which the notes relate. Issue preclusion is inapplicable for similar reasons. Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," so long as the party against whom it is asserted had a "full and fair opportunity to litigate" the issue in the prior proceeding. *Taylor*, 553 U.S. at 892 (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Wilson had no opportunity to litigate the question of racial

discrimination in the prior proceedings listed.  The District Attorney has not argued that any of the narrow exceptions to "the general rule against nonparty preclusion" apply.  *In re Montgomery Ward, LLC*, 634 F.3d 732, 737 (3d Cir. 2011) (citing *Taylor*, 553 U.S. at 892).[2]

7.  As to the District Attorney's contention that "it would be an incredible drain on the resources of the Court (as well as the parties)" to litigate the facts of many old proceedings during the trial of this case, I am sensitive to the concern but find the objection premature.  The case is still in discovery, and the District Attorney has not argued that producing the requested notes would cause him inordinate hardship.

8.   The District Attorney also objects to Plaintiff's discovery request "on its merits," on the ground that the jury selection notes are privileged attorney work product.  Resp. at 5.

9.  Rule 23(b)(iii) of the Federal Rules of Civil Procedure, which governs the discovery of attorney work product, provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 23(b)(iii)(A); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 (3d Cir. 2003) (explaining work-product doctrine).

10.  As an initial matter, it is not entirely clear that that the work-product privilege applies in a proceeding unrelated to the litigation for which the work was prepared.  *See, e.g.*, *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) ("We therefore need not decide whether the work product privilege applies to all litigation, related or not.").

11.  Assuming *arguendo* that it does, the privilege is waived when the party invoking it places the subject matter of the privileged material at issue.  *See United States v. Nobles*, 422

---

[2] Rather, the District Attorney cites *Rider v. Commonwealth of Pennsylvania*, 850 F.2d 982 (3d Cir. 1988), for the proposition that issue preclusion may apply against a non-party to the prior proceeding.  I do not read *Rider* to have that import.  If it did, it would have been clearly overruled by subsequent Supreme Court and Third Circuit caselaw.  *E.g. Taylor*, 553 U.S. at 892-99.

4

U.S. 225, 239 (1975); *United States v. Purcell*, 667 F. Supp. 2d 498, 521 (E.D. Pa. 2009), aff'd, 517 F. App'x 79 (3d Cir. 2013); *cf. Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (elaborating this waiver doctrine in the context of attorney-client communications). In *Nobles*, "defense counsel sought to impeach the credibility of key prosecution witnesses by testimony of a defense investigator" about his earlier conversation with the witness. 422 U.S. at 227. When the prosecution requested the investigator's notes from the conversation, however, the defense lawyer invoked the work-product privilege. *Id.* at 236. The Supreme Court held that

> by electing to present the investigator as a witness, [defense counsel] waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

*Id.* at 239-40.

12. If, in this case, the District Attorney calls individual ADAs to testify about their own jury selection practices, he will be placing their thought processes during jury selection at issue. Intentional discrimination hinges, obviously, on subjective intent. An ADA who testifies that he did not discriminate is testifying to his subjective mental processes, and Plaintiff is entitled to cross-examine him about those processes with the benefit of his contemporaneous notes. So long as the District Attorney reserves the right to call ADAs for this purpose, he must produce the jury selection notes that Plaintiff requests.

13. The District Attorney objects that he need not disclose the notes because the proceedings to which they relate "have been captured in a transcript," and the notes "plainly are not the sole memorialization of the proceeding." Resp. at 7. The fact in dispute, however, is not

what happened in the proceeding of record, but what happened off the record – the prosecutors' subjective intent.

14. The District Attorney further states that he "presently does not intend to question" the ADA witnesses about their jury selection practice "in any particular case," and has only noticed the potential witnesses in response to the disclosure of the case list underlying the Baldus & Woodworth studies. Resp. at 7-8. The nature of these objections is unclear. To the extent that the District Attorney implies that he has been forced to notice these witnesses, and so cannot be deemed to have taken an "affirmative step" to put their thought processes at issue, *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863, the argument is not persuasive. The Baldus & Woodworth studies are statistical analyses of public data. The only way to challenge statistical conclusions is by contesting the analytical methodology. Testimony by ADAs about their own practices has no possible bearing on the integrity of a statistical analysis. It appears, rather, that the District Attorney intends to challenge the *probative value* of the studies' results. In other words, the studies may suggest a statistical likelihood of discrimination – but the ADAs can testify that, as a matter of fact, they did not intentionally strike jurors on the basis of race. The District Attorney is entitled to present this evidence. But if he chooses to offer testimony based on participation in individual cases, that testimony puts the witnesses' intent during jury selection in those cases at issue. This is true whether a witness testifies about specific cases or about his practice in general, since either form of testimony will necessarily be premised on the cases he prosecuted.

15. Because Plaintiff's request is limited to the jury selection notes of the District Attorney's potential witnesses (in cases included in the Baldus & Woodworth studies), it does

not require me to decide whether Plaintiff would be entitled to such notes if the work-product privilege were not waived.  I will not address that question at present.[3]

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's Motion to Compel (Docs. 183 & 185) is **GRANTED**, subject to the following conditions.

The District Attorney shall have the opportunity to amend his Rule 26(a)(1) witness list, by **March 31, 2014**, to exclude the ADA witnesses added after the reopening of discovery. If he elects not to do so, he shall produce the jury selection notes that Plaintiff has requested by **April 18, 2014,** and Plaintiff shall be entitled to depose the new witnesses by **May 2, 2014.**  If the District Attorney wishes to raise objections to the disclosure of specific notes once he has reviewed them, he shall file an appropriate motion by **April 11, 2014**.


BY THE COURT:


**/s/ L. Felipe Restrepo_____**
L. FELIPE RESTREPO
UNITED STATES DISTRICT JUDGE

---

[3] It appears complex.  Rule 26 permits a court to order disclosure of attorney work product if the party seeking discovery demonstrates a "substantial need" and the inability to obtain the information otherwise, *see* Fed. R. Civ. P. 26(b)(3)(A), but "core or opinion work product" – including an attorney's "mental impressions" – "receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances."  *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003); *see also* Fed. R. Civ. P. 26(b)(3)(B).  Caselaw discussing the scope of discovery for purposes of *Batson* claims in criminal post-conviction proceedings is sparse, to say nothing of § 1983 suits.  *Cf. In re Horn*, 185 F. App'x 199, 202 (3d Cir. 2006) (declining the Commonwealth's invitation to "issue an advisory opinion on the scope of discovery for *Batson* claims" where the discovery dispute that formed the basis for appeal in a habeas proceeding was moot); *United States v. Barnette*, 644 F.3d 192, 214 (4th Cir. 2011) (endorsing the District Court's decision to review jury selection notes *in camera* for purposes of a *Batson* challenge in capital trial proceedings, given the specific circumstances of the case).