IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HAROLD C. WILSON,**<br><br>   *Plaintiff*,<br><br>v.<br><br>**CITY OF PHILADELPHIA, et al.,**<br><br>   *Defendants*. | **CIVIL ACTION**<br>**NO. 04-05396** |

**PAPPERT, J.**                                                                                                April 8, 2016

**<u>MEMORANDUM</u>**

  The factual background to this case is extensive and is recited in detail in the Court's separate opinion on the Defendants' motions for summary judgment. *See Wilson v. City of Philadelphia*, No. 04-05396 (E.D. Pa. Apr. 8, 2016) (ECF No. 245). The Court recites here those facts most pertinent to the present motion for summary judgment filed by Plaintiff Harold C. Wilson ("Wilson").

  On October 4, 1989, a Philadelphia County Court of Common Pleas jury found Wilson guilty of three counts of first-degree murder and one count of possessing an instrument of crime. (Joint Appendix ("JA") 1091–1101.)[1] Wilson filed post-trial motions asserting, among other things, that his equal protection rights under *Batson v. Kentucky*, 476 U.S. 79 (1986) were violated when the prosecutor in his case discriminated in jury selection. (JA 5785–5926.) The trial court heard Wilson's motions on October 3, 1991, and ultimately denied them in December 1993. (JA 5786.) Wilson appealed his case directly to the Pennsylvania Supreme Court, which affirmed the trial court's decision in February 1996. (*Id.*)

---

[1]   Given the extensive record in this case, the parties have submitted a Joint Appendix. The pages in the Joint Appendix are labeled with a prefix of "JA." The Court maintains this numbering scheme when citing to the record.

1

In March 1997, the videotape of a lecture given by Wilson's prosecutor, Jack McMahon ("McMahon"), became public. McMahon had given his presentation at some point after the 1986 *Batson* decision but before Wilson's 1989 trial. The contents of the tape are discussed in greater detail in the Court's opinion deciding the Defendants' motions for summary judgment. In short, McMahon explained to other Assistant District Attorneys ("ADAs") in the Philadelphia District Attorney's Office ("DAO") his strategies on jury selection, some of which were impermissible under *Batson*.

After learning of the video, Wilson filed for post-conviction relief and renewed his *Batson* claim. (JA 5785–5926.) The Common Pleas Court held an evidentiary hearing and eventually set aside Wilson's convictions and granted him a new trial "because of the Commonwealth's violation of [] *Batson*." (JA 1208, 4253–99.) Wilson was retried and ultimately acquitted of all charges. (JA 1458.) He thereafter filed this lawsuit.

Wilson's claims against the DAO[2] allege: (1) a violation of his equal protection rights under the Fourteenth Amendment; and (2) a 42 U.S.C. Section 1983[3] *Monell* claim contending that the DAO had a policy or custom of racial discrimination in jury selection which caused Wilson's constitutional injury. (Second Am. Compl. ¶¶ 56–67, ECF No. 89.)[4] Wilson's summary judgment motion against the DAO seeks to apply offensive collateral estoppel to bar relitigation of his *Batson* claim because it was already litigated in the PCRA hearing where the

---

[2] Wilson also sued the City of Philadelphia and former officers of the Philadelphia Police Department ("the City Defendants"). (*See generally* Second Am. Compl.) Wilson's claims against the City Defendants are not relevant to the Court's analysis of Wilson's motion for summary judgment *infra*.

[3] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

[4] Wilson concedes that he erroneously labeled his second amended complaint as the "Third Amended Complaint." (*See* ECF No. 104 at 1.) Thus, the Court refers to the operative complaint as the Second Amended Complaint ("Second Am. Compl.").

2

DAO had a full and fair opportunity to defend itself.  For the reasons below, the Court grants Wilson's motion.

## I.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party.  *Id.* at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## II.

Collateral estoppel, or issue preclusion, compels a later court to honor the earlier decision of a matter that was actually litigated.  *See Dici v. Pennsylvania*, 91 F.3d 542, 547 (3d Cir. 1997).  The doctrine relieves parties of the cost and vexation of multiple lawsuits, facilitates judicial consistency, conserves judicial resources and encourages reliance on adjudication.  *See Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 51 (Pa. 2005); *see also Schaffer v.*

*Smith*, 673 A.2d 872, 875 (Pa. 1996). The movant bears the burden of showing that collateral estoppel applies. *See Chisholm v. Def. Logistics Agency*, 656 F.2d 42, 50 (3d Cir. 1981).

Under the Full Faith and Credit Act, 28 U.S.C. Section 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Baker v. General Motors Corp.*, 522 U.S. 222, 246 (1998) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)). Congress directs federal courts to "look principally to *state* law in deciding what effect to give state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Under Pennsylvania law, relitigation of an issue is barred by collateral estoppel if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.[5] *See Kiesewetter*, 889 A.2d at 50–51.; *see also Office of Disciplinary Counsel v. Duffield*, 644 A.2d 1186, 1189 (Pa. 1994).

First, the issue in Wilson's Post Conviction Relief Act ("PCRA") hearing and this case must be "sufficiently similar." *Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002). The similarity of the issue "is established by showing that the same general legal rules govern both

---

[5]   The DAO's brief is largely unresponsive to Wilson's analysis of the *Kiesewetter* factors. (*See generally* Def.'s Resp. to Pl.'s Mot. Summ. J. ("Def.'s Resp."), ECF No. 222.) At oral argument, the DAO conceded that collateral estoppel should apply under the five *Kiesewetter* factors:

> The Court: If we apply the five factors, can you make any argument that taking fairness aside, if we just apply the five factors, do you have any argument that collateral estoppel should not apply?
>
> Mr. Scalera: Under the five factors we [the DAO] haven't contested it.

(Oral Arg. 59:11–17, ECF No. 244.) Instead, the DAO argues that fairness considerations should preclude collateral estoppel's applicability. *See infra* Part IV.

cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (internal citation omitted).  To defeat such a finding, "the difference in the applicable legal standards must be substantial."  *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 689 n.12 (E.D. Pa. 2009) (quoting *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995)).

The Common Pleas Court held a PCRA hearing on Wilson's *Batson* claim.  (JA 4254–99.)  The court stated he was "entitled to a new trial because of the Commonwealth's violation of [] *Batson*."  (JA 1208, 4253.)  Similarly, in this case Wilson must prove an underlying *Batson* violation as an initial element of his *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) claim against the DAO.  (Pl.'s Mot. Summ. J. ("Pl.'s Mot.") at 9, ECF No. 212-1.)  The PCRA court's determination that Wilson's *Batson* rights were violated is sufficiently similar to a determination that Wilson's *Batson* rights were violated within the context of his *Monell* claim as to fulfill the first *Kiesewetter* factor.

Second, there must be a final judgment on the merits.  *See Kiesewetter*, 889 A.2d at 50–51.  A judgment is "final" for purposes of collateral estoppel "unless or until it is reversed on appeal."  *Shaffer*, 673 A.2d at 874.  A decision is "on the merits" when it "resolves the claim on the basis of its substance, rather than on a procedural, or other, ground."  *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The state court order vacating Wilson's conviction and granting him a new trial was "final" as the Commonwealth chose not to appeal.  (Joint Statement of Facts ¶ 28, ECF No. 211-1.)  The order was "on the merits" because the PCRA court found that Wilson was entitled to a new trial as a result of the Commonwealth's violation of *Batson*.  (JA 1208–09, 4253.)

Third, the DAO must be in privity "with a party in the prior case." *Kiesewetter*, 889 A.2d at 50–51. The DAO concedes that it was "an arm of the Commonwealth in all aspects of Wilson's prosecution." (Def.'s Resp. at 2–4.) The third *Kiesewetter* factor is met.

Fourth, the Commonwealth, as the party in privity with the DAO, must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Kiesewetter*, 889 A.2d at 50–51. The requirement that a party have a "full and fair opportunity to litigate" mandates that "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982); *see also Rider v. Pennsylvania*, 850 F.2d 982, 991 (3d Cir. 1988). The mandate "does not require that the issue must have been thoroughly litigated." *Lynch v. City of Philadelphia*, No. 08-4780, 2009 WL 1424489, at *2 (E.D. Pa. May 20, 2009) (citations omitted) (internal quotation marks omitted).

The Commonwealth exchanged discovery, filed briefs, presented McMahon's testimony, and engaged in oral argument to support its contention that *Batson* was not violated during Wilson's first criminal trial. (JA 488–595, 1177–1217, 4254–4457.) The Commonwealth had an opportunity to appeal the PCRA court's ruling granting Wilson a new trial, but chose not to do so. (Joint Statement of Facts ¶ 28.) The Commonwealth, therefore, had a full and fair opportunity to litigate the *Batson* claim.

Fifth and finally, the determination in the prior proceeding must have been essential to the judgment. *See Kiesewetter*, 889 A.2d at 50–51. "This necessity requirement is justified by concerns that the first court may not have taken sufficient care in determining an issue that did not affect the result and that appellate review may not be available to ensure the quality of the initial decision." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.2d 252, 266 (3d Cir. 2008) (citations

and internal quotation marks omitted).  As the PCRA court's finding that Wilson's *Batson* rights were violated was the basis for his new trial, it was necessarily essential to the judgment.  (JA 1208–09, 4253.)

### III.

While the DAO concedes that Wilson fulfills the five *Kiesewetter* factors, it argues that collateral estoppel should not apply for fairness reasons.  *See supra* note 1.  "A finding of fairness to the defendant is [] a necessary premise to the application of offensive collateral estoppel."  *Raytech*, 54 F.3d at 195.  The Supreme Court of the United States grants district courts "broad discretion" to determine when a plaintiff "who has met the requisites for the application of collateral estoppel may employ that doctrine offensively."  *Raytech*, 54 F.3d at 195 (citation omitted).  The DAO advances three fairness arguments, all of which the Court finds unpersuasive.

First, the DAO argues that "there is a vast gulf between the consequences of losing a PCRA petition and losing a civil suit where damages in excess of ten million dollars are claimed."  (Def.'s Resp. at 4.)[6]  The DAO relies on the Supreme Court's decision in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) to support this proposition.  In *Parklane*, the Court referenced a hypothetical scenario in which offensive collateral estoppel would be unfair: "If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable."  *Parklane*, 439 U.S. at 330.  Wilson's first trial was not a civil case for nominal damages; it was a criminal trial with the highest possible stakes for Wilson: the deprivation of his liberty and even the loss of his life by execution.  The stakes were high for the Commonwealth as well; namely the conviction of

---

[6]    At oral argument, Wilson's counsel conceded that the *Monell* claim against the DAO cannot form the basis for a damage award that takes into account Wilson's incarceration.  (Oral Arg. 116:16–18.)

someone they believed murdered three individuals. This case is clearly distinguishable from *Parklane*.

Second, the DAO contends that "giving binding effect to the PCRA court's conclusion would incentivize [DAOs] across the Commonwealth to litigate to the hilt every issue that could conceivably form the basis for civil liability down the road." (Def.'s Resp. at 4.) This cannot be the case. If the DAO believed it had a chance to win an appeal of the PCRA court's ruling, it presumably would have pursued one. The DAO instead made a strategic decision to accept the PCRA court's finding and retry Wilson. The DAO must live with the consequences of that choice.

Third, the DAO argues that "Wilson raised a *Batson* challenge before three state courts and lost twice: his claim was rejected both by the trial court that conducted the challenged *voir dire* and by the Pennsylvania Supreme Court." (Def.'s Resp. at 5.) The two prior decisions, however, preceded the release of the McMahon tape. The PCRA court, with the benefit of the McMahon tape, determined that Wilson's *Batson* rights were violated.

Collateral estoppel bars relitigation of Wilson's underlying *Batson* claim. An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.